THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MERVIN L. BEIL, Defendant-Appellant.

Fourth District   No. 15386

Opinion filed September 26, 1979.

Young Law Offices, P.C., of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (Marc D. Towler and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:
Speeding charge.
Jury trial available?
Of course!
We reverse and remand.

The trial court, sitting at bench, found Mervin L. Beil guilty of the offense of speeding and imposed a fine of $35. In this appeal, he raises four issues which, he contends, require that his conviction be reversed. Although we agree with him on only two, the same issues may arise on retrial and we must necessarily address all four.

Prior to trial, the defendant requested a trial by jury and also filed a motion *in limine* seeking to have the officer who issued the citation ordered to appear in civilian clothing. The trial court denied both requests and the case proceeded to a bench trial.

### FACTS

The evidence presented by the prosecution consisted of the testimony of Illinois State Trooper Larry Hemann. He testified that at approximately 8:05 p.m. on August 5, 1978, he was parked on the shoulder of the southbound lane of Interstate 55 just north of Old Toronto Road near Springfield. Upon arrival at that location he had tested his radar gun for accuracy by striking a 55-miles-per-hour tuning fork against the steering wheel of his vehicle. When the radar is operating correctly, a speed of 55 miles per hour will be indicated on the gun. At this time Hemann found the gun to be accurate.

An automobile traveling in the northbound lane of Interstate 55 at

what appeared to be a faster rate of speed than the other traffic was observed by Hemann. When his radar gun was trained on that vehicle, it registered a speed of 67 miles per hour. As the vehicle passed Hemann's location, he noted that it was a white over blue 1974 Cadillac with a front license plate number of XXX229. An objection to the officer's conclusion as to the speed of this vehicle based upon an improper foundation was overruled and the officer further described his activities.

There were no obstructions located between the officer's position and that of the 1974 Cadillac which would impede or interfere with the performance of the radar. Noting that the area was a 55-miles-per-hour speed zone, the officer locked the 67 miles per hour reading in on the radar gun and pursued and stopped the vehicle. After issuing a traffic citation to the defendant, the officer again checked the accuracy of the radar device and found it to be operating properly.

During cross-examination of Hemann he testified that he received academy training on the use of the radar gun and had received a booklet concerning the device. Although part of his training included checking the accuracy of the tuning fork, he had not checked this fork. The radar gun used by the officer is a nondiscriminating device and he did not know if the signal transmitted was the same signal that was received. He also admitted that he had lost sight of the speeding vehicle for a few seconds but he had earlier testified that the unit he stopped was the same one that he had clocked at 67 miles per hour.

Motions to strike the officer's testimony and to dismiss were denied and the defendant was called to testify. His attempts to qualify himself as an expert in the field of radar were rejected by the trial court, and an offer of proof on this issue was then made.

The offer of proof showed that the defendant had been a pilot in the United States Navy and received instruction on the various types of radar devices. Defendant's flight training included instruction in the field of physics and on the principles of radar. He also had courses dealing with electronics and the construction, operation, and use of radar, both as a transmitter and as a receiver. Since then he has had the opportunity to view and work with more recent developments in the use of radar for peacetime activities. He has also followed these developments through literature on the subject.

The defendant further testified in his offer of proof that the principle of radar has remained the same since its invention and that the device used in this case works on the same principle—the Doppler shift. Radar operates by transmitting and then receiving an electromagnetic wave. The transmitted signal is set at a predetermined frequency and the unit will receive any signal within the bands of its ability to receive. The

defendant testified that it does not discriminate between the reception of the transmitted signal and reception of a signal from another source, such as an airplane, dialysis machine, or a switching device located at a railroad intersection. Although the device registers a read-out in miles per hour, defendant testified that the unit cannot determine where the change in frequency occurred. He was present when a State police radar unit was aimed at a highway which was free of any traffic whatever and the unit registered a speed of 105 miles per hour.

After concluding his offer of proof, the defendant testified that 10 or 15 minutes prior to the time he was stopped by the officer he had been at the White Oaks Mall in Springfield. From there he traveled on Highway 36 in an easterly direction until he reached the 6th Street off-ramp. There he merged into the northbound traffic lane and observed one vehicle to which he yielded. From Toronto Road to the point where he was stopped is approximately 1.3 miles; however, after leaving the off-ramp, he traveled only 2 to 3 tenths of a mile before he was stopped. According to the defendant, it was impossible for the officer to have observed a front license plate on his car because none was located there on the date of this incident.

Brian Briggs testified that he was with the defendant when the officer issued the citation involved in this case and that no front license plate was then on defendant's car. In rebuttal, the officer stated that Briggs was not with the defendant when he issued this citation.

### Right to Jury Trial

The first issue raised by the defendant in this appeal concerns the propriety of the trial court's denial of his request for a jury trial. On the reverse side of the Illinois citation and complaint issued to the defendant appears the form to be used when requesting a trial by jury. This form is required by Supreme Court Rule 505. (Ill. Rev. Stat. 1977, ch. 110A, par. 505.) The State admitted in oral argument that the defendant complied with the rule but the trial court, nevertheless, denied his request. We have concluded that the defendant was entitled to have his case submitted to a jury and, accordingly, we reverse.

■■ In the Code of Criminal Procedure of 1963 a right to a trial by jury is afforded to every person who is accused of an offense. (Ill. Rev. Stat. 1977, ch. 38, par. 103—6.) The Code defines an offense as a violation of any penal statute. (Ill. Rev. Stat. 1977, ch. 38, par. 102—15.) In *People v. Manion* (1972), 3 Ill. App. 3d 621, 278 N.E.2d 175, it was held that these statutory provisions created a right to a jury trial for a person charged with the offense of speeding.

In this case the State contends that the statutory right to a trial by jury

no longer exists for one charged with offenses of this type. It is argued that the right was eliminated when the legislature reclassified these offenses and designated them as petty offenses. We are urged by the State to hold that petty offenses are not to be considered penal statutes for the purposes of determining a defendant's entitlement to a jury trial.

We reject the invitation to make such distinction.

■■ It is true that when *Manion* was decided the offense of speeding was classified as a misdemeanor and a jail term was a possible sanction if the charges were sustained. (Ill. Rev. Stat. 1967, ch. 95½, par. 234.) Speeding is now classified as a petty offense *if* it is a first or second conviction within one year. If the offense remains in that category, a jail term is no longer one of the alternative sanctions. (Ill. Rev. Stat. 1977, ch. 95½, par. 16—104; ch. 38, par. 1005—1—17.) Once a person is convicted of a third violation within one year, however, the person is then guilty of a Class C misdemeanor.

Acceptance of the State's position would mean that a defendant charged with speeding would be afforded a jury trial only if he had already been twice convicted of the offense within one year. We are not persuaded that the legislature intended such a result.

Moreover, the legislature has provided this statutory right to trial by jury for a person charged with the violation of any penal statute. That term has been defined to include any statutes "which prohibit an act and impose a penalty for the commission of it." (Black's Law Dictionary 1290 (4th ed. 1968).) Clearly, that is the type of statute involved in this case. The legislature has withdrawn jail as a possible sanction for a first or second conviction in such cases. We are unable to ascribe to that action, however, any indication that it also intended to extinguish the defendant's right to a trial by jury.

## Accuracy of Radar

The defendant next argues that the State failed to establish the accuracy of the radar device used by Trooper Hemann. This attack centers on the officer's failure to test the tuning fork for accuracy and his inability to state that the signal his unit received was the same one it had transmitted.

■■■ Radar's accuracy as a means of determining speed is a fact which courts will judicially notice. (*People v. Abdallah* (1967), 82 Ill. App. 2d 312, 226 N.E.2d 408.) Where, as here, the officer testifies that he has tested the device both before and after the issuance of the citation, indicates that there was nothing to impede or interfere with the device, and states that it was his opinion that the device was working accurately, the State has laid a sufficient foundation to admit this evidence. The question of guilt is then determined by the trier of fact. (*Abdallah.*) No error.

EXPERT WITNESS

We next turn to the defendant's argument that it was error for the trial court to exclude his testimony as an expert in the field of radar and radar devices. We agree.

■■ An individual will be permitted to testify as an expert when his experience and qualifications give him knowledge which is not common to the world and where his testimony will aid the jury in reaching its determination. (*People v. Driver* (1978), 62 Ill. App. 3d 847, 379 N.E.2d 840.) Whether an individual is qualified to testify as an expert is within the sound discretion of the trial court. *People v. Pappas* (1978), 66 Ill. App. 3d 360, 383 N.E.2d 1190.

The State contends that the defendant's testimony was properly excluded because he had no familiarity with the particular device used by Trooper Hemann. Without this knowledge he would, according to the State, have no basis upon which to form an opinion. Even if he had inspected the device, the State argues that his knowledge was not beyond that of the average person. We disagree with the State on both points.

■■ A review of the defendant's offer of proof clearly shows that his knowledge of radar and radar devices is beyond that of the average person. As a pilot in the Navy the defendant had received numerous courses dealing with the principles of radar, its manufacture, operation, and use. He had operated radar while in the Navy, worked with more recent developments since that time, and followed the recent developments through literature in the field. It was explained that the principles upon which radar operates have remained unchanged since its inception. We believe that this evidence was sufficient to qualify the defendant as an expert witness in the field of radar and radar devices.

It is undisputed that the defendant had not examined the particular device used by Trooper Hemann. This fact does not, however, require the exclusion of defendant's testimony. His testimony was an assault on the use of radar as a means of detecting speed rather than on the accuracy of the particular unit. In this situation, the fact that he had not examined the particular device is not germane to the question of the admissibility of his testimony although it would be a factor affecting the weight to be afforded it.

The State conceded in oral argument that evidence on the issue of the reliability of radar as a means of detecting speed was not precluded solely by the fact that judicial notice has been taken of its reliability. And we agree. To hold otherwise would mean that once a fact has been judicially noted a party could never introduce evidence to rebut that fact. The doctrine of judicial notice is not intended to create such an impervious rule.

We thus conclude that the defendant's testimony should not have been excluded and the trial court abused its discretion when it ruled otherwise.

### OFFICER IN UNIFORM

Finally, the defendant challenges the trial court's denial of his motion seeking to have the police officer appear in mufti. He acknowledges that he has discovered no Illinois cases to support his argument but contends that allowing the officer to testify while in uniform creates an impediment to the observation of the trier of fact and also creates a prejudice in the mind of the fact finder which renders the officer's testimony more credible.

It is the duty of the presiding judge to insure that the trial proceedings are conducted in an orderly manner and the control and conduct of the trial rests in his discretion. (*People v. Long* (1968), 39 Ill. 2d 40, 233 N.E.2d 389.) We conclude that there was no abuse of discretion when the trial court allowed a police officer to testify while dressed in his normal occupational attire. After all, the officer was acting in his official capacity when making the arrest and later testified in that same official position. He was in uniform when making the charge and we see nothing wrong, incorrect, improper, unfair, or unjust in his appearance in court in the same uniform rather than ordinary clothing. He was not there as a civilian—he was there as a police officer, in his authoritative role. The court was completely correct in having him testify in uniform rather than mufti.

It is also obvious that the defendant could not require the State to refrain from revealing the officer's occupation—thus hiding his identity from the jury. Prospective jurors may be questioned, however, regarding their ability to give the same consideration to the testimony of a police officer as that of a lay witness. If defendant believes that a prospective juror cannot fairly and impartially weigh the officer's testimony, he may request to have that juror excused. We refuse to assume that a juror is incapable of fairly weighing the officer's testimony merely because he has appeared while in uniform.

Reversed and remanded.

GREEN and CRAVEN, JJ., concur.