501 S.E.2d 122

**The STATE, Respondent,**

v.

**David Clayton HILL, Appellant.**

No. 24803.

Supreme Court of South Carolina.

Heard Feb. 2, 1998.

Decided June 8, 1998.

Rehearing Denied July 6, 1998.

Assistant Appellate Defender Robert M. Dudek, of S.C. Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorneys General Christie Newman Barrett and Robert F. Daley, Jr., Columbia; and Solicitor Ralph J. Wilson, Conway, for respondent.

MOORE, Justice:

Appellant was convicted of murdering a police officer and sentenced to death. We affirm.

### FACTS

On March 7, 1994, Officer Spencer Guerry of the Georgetown Police Department stopped appellant in the parking lot of a car wash. Appellant was driving a silver/gray Honda Prelude with expired Colorado plates. He did not have a valid driver's license and he had marijuana in the car. Officer Guerry took appellant's Colorado identification card and car registration and called the information in to the dispatcher. As he was walking back to appellant's car, he was shot once through the cheek.

After the shooting, appellant drove to his house, picked up his girlfriend, Wendy, and some of his belongings, and then drove to his mother's mobile home. He told his mother he was in trouble and asked if Wendy could borrow her car. His mother refused but offered to drive. His mother and Wendy followed appellant down a dirt road where appellant drove his car into a ditch. They then returned to his mother's mobile home and appellant asked Wendy to report his car stolen. Wendy refused. Appellant left the mobile home for a while. During his absence, the police arrived searching for appellant.

Later, appellant returned to his mother's mobile home. He took a shower, washed his clothes, and poured Clorox on his hands. He then called the police and was arrested. Appellant's defense at trial was that someone had been hiding in his backseat and shot Officer Guerry. At trial, several witnesses testified appellant was the only person in the Honda.

## DISCUSSION

### Excited Utterance

■ Appellant contends the trial judge erred in refusing to allow a witness to testify about hearsay evidence under the excited utterance or *res gestae* exception. We disagree.

Kenneth Grant was a block away from the car wash when the shooting occurred. Fifteen minutes after the shooting, Grant went to the car wash. He testified *in camera* that after being at the car wash for another 15 or 20 minutes, he heard an unidentifiable person in the crowd state there were two suspects. The trial judge ruled this hearsay testimony inadmissible.

Rule 803(2), SCRE, states: "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: ... (2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition."

■ The rationale behind the excited utterance exception is that the startling event suspends the declarant's process of reflective thought, thus reducing the likelihood of fabrication. *See State v. Harrison*, 298 S.C. 333, 380 S.E.2d 818 (1989) (decided prior to the adoption of the Rules of Evidence but discussed the "excited utterance" exception in relation to *res gestae* ). In determining whether a statement falls within the excited utterance exception, the totality of the circumstances is viewed. *Id.*

■ "Statements which are not based on firsthand information, as where the declarant was not an actual witness to the event, are not admissible under the excited utterance or spontaneous declaration exception to the hearsay rule." 23 C.J.S. *Crim.Law* § 876 (1989). The hearsay statement of an

unknown bystander is admissible under the excited utterance exception only when the circumstances which surround it would affect the declarant in a way that assures its spontaneity and, therefore, its reliability for trustworthiness. *People v. Mares,* 705 P.2d 1013, 1016 (Colo.App.1985). *See also People v. Fields,* 71 Ill.App.3d 888, 28 Ill.Dec. 202, 390 N.E.2d 369 (1979) (if nature of event or circumstances indicate bystander did not observe the act, declaration should be excluded); *State v. Kent,* 157 Mich.App. 780, 404 N.W.2d 668 (1987) (declarant must have had opportunity to personally observe the matter of which he speaks); *Commonwealth v. Stetler,* 494 Pa. 551, 431 A.2d 992 (1981) (declarant must have perceived the happening); *Underwood v. State,* 604 S.W.2d 875 (Tenn.Crim.App. 1979) (excited utterance of bystanders admissible when declarant observed the act and the declaration arose from personal observation). *Cf. Crawford v. Charleston–Isle of Palms Traction Co.,* 126 S.C. 447, 120 S.E. 381 (1923) (under *res gestae* exception, declarant must have had opportunity to personally observe the matter of which he speaks).

There is no evidence the unidentified declarant witnessed the shooting. Further, it is unknown whether the declarant was under the stress of excitement caused by the event. Therefore, the trial judge did not err in ruling this statement inadmissible.

### *Presence of Uniformed Officers*

▆▆▆▆ Appellant contends the trial judge erred in refusing to clear the courtroom and the hallways of uniformed officers. Appellant also moved for the trial judge to order officers who were witnesses to dress in civilian clothing.[1] Appellant con-

---

1. The State argues appellant's argument is procedurally barred because he made this motion *in limine* and failed to renew the objection at trial and obtain a final ruling citing *State v. Schumpert,* 435 S.E.2d 859, 312 S.C. 502 (1993). The State also argues this same procedural bar for appellant's issue regarding television cameras. We disagree. Appellant made these motions during *voir dire.* Generally, a motion *in limine* seeks a pretrial evidentiary ruling to prevent the disclosure of potentially prejudicial matter to the jury. *See State v. Floyd,* 295 S.C. 518, 369 S.E.2d 842 (1988). A pre-trial ruling on the admissibility of evidence is preliminary, and is subject to change based on developments at trial. *Id.* Here, the issues appellant raised were not motions *in limine. See Hernandez v. State,* 767 S.W.2d 902 (Tex.App.1989)

tends this was a show of force which denied him a fair trial. We disagree.

To prevail on such a claim, appellant must show that the measures taken in the courtroom created either an actual or inherent prejudicial effect on the jury. Inherent prejudice occurs when "an unacceptable risk is presented of impermissible factors coming into play." *Holbrook v. Flynn*, 475 U.S. 560, 572, 106 S.Ct. 1340, 1346–47, 89 L.Ed.2d 525, 535 (1986). *State v. Tucker*, 324 S.C. 155, 478 S.E.2d 260, 271 (1996) (citing *Holbrook* ). In *Holbrook*, the United States Supreme Court held the presence of four uniformed officers seated directly behind the defendant was not so inherently prejudicial that respondent was thereby denied his constitutional right to a fair trial.

Here, appellant conceded that of the six people he counted, some were bailiffs and personnel of the solicitor's office. We cannot tell from the record how many uniformed officers were present. We also cannot tell if these officers were witnesses waiting to testify. There were at least 17 police officers (not counting SLED agents) who testified.

In this case, the number of officers is unknown and the role of the majority of the officers was not to provide additional security, but rather testify as witnesses. Any actual prejudice in this case is wholly speculative. Appellant simply has presented no evidence to show the presence of the officers had any effect on the jury. Further, without anything more than the mere assertion that six officers were present in the courtroom, we cannot find appellant has shown any inherent prejudice. Accordingly, we find no actual or inherent prejudice.[2]

---

(appellant's motion made during voir dire was not a true motion *in limine* ). The uniformed officers and television cameras were, according to appellant, already affecting the jurors. These were not motions *in limine* about the admissibility of evidence which would not effect the trial until actually offered.

2. The appellant states the presence of the uniformed officers resulted in a "carnival-like atmosphere." However, he does not point to any evidence or show how the officers' presence might have disrupted the trial or influenced the jury.

Moreover, at the sentencing phase, appellant renewed his objection and the trial judge went over specifically the number of officers in the courtroom. The trial judge again denied the motion and appellant is not appealing this ruling. Appellant stated there were four bailiffs, one uniformed officer near him, two uniformed officers near the door and two uniformed officers on the back row. The appellant then stated if that was all of the officers in the courtroom, he was satisfied. He was concerned the courtroom might fill up with officers at a later time. There were fewer officers present during the guilt phase which is the basis for this issue on appeal.

 As to requiring the officers who were witnesses to dress in civilian clothing, we find this issue has no merit. The trial court did not abuse its discretion in allowing the officers to testify while in uniform since the officers were acting in their official capacity and not as civilians. *People v. Beil*, 76 Ill.App.3d 924, 32 Ill.Dec. 290, 395 N.E.2d 400 (1979). *See also Brown v. Indiana*, 256 Ind. 444, 446, 269 N.E.2d 377, 378 (1971) ("It would be nothing short of ludicrous for this Court to hold these officers would be required to change into civilian clothes before entering the court room to testify.")

### Television cameras

 Appellant contends the trial judge erred in refusing to order the television cameras to discontinue filming during jury selection. Appellant argues the television cameras were intimidating the jurors. We disagree.

On appeal, appellant points to two jurors. One juror originally had not given correct information about his mental status. The juror sent the trial judge a note stating he did not give correct information and he wanted to inform the court he was on medication for depression. The trial judge cleared the courtroom and inquired as to the juror's mental status and his medication. This juror stated, "[T]here were people in the room that I did not want to have this information ..." The juror never stated he was troubled by only the media or, in particular, the cameras. The other juror stated he thought the *voir dire* process was going to be more private and he did not realize the media *and others* would be present.

Appellant's argument addresses only the presence of television cameras in the courtroom, while these jurors' concerns were about privacy in general. Further, we note both of these jurors were found unqualified by the trial judge.

Lastly, appellant contends camera crews from three television stations were present at trial and created a disruptive atmosphere. This information is not in the record. In fact, when appellant made this motion, the court noted there was only one television crew present. The trial judge did not abuse his discretion in refusing to remove the cameras from the courtroom. Accordingly, this issue has no merit.

### Voir Dire Regarding Specific Mitigating Circumstance

Appellant wanted to ask jurors whether they would consider that appellant did not have a significant prior criminal history of violence. Appellant contends the trial judge erred in not allowing him to ask this question on voir dire.[3] We disagree.

The authority and responsibility of the trial court is to focus the scope of the voir dire examination as set forth in S.C.Code Ann. § 14–7–1020 (Supp.1995). *State v. Plath,* 281 S.C. 1, 313 S.E.2d 619 (1984). S.C.Code Ann. § 16–3–20(D) (Supp.1995) grants a capital defendant the right to examine jurors through counsel but does not enlarge the scope of voir dire permitted under § 14–7–1020. *State v. Owens,* 293 S.C. 161, 359 S.E.2d 275 (1987). The manner in which these questions are pursued and the scope of any additional voir dire are matters of trial court discretion. *State v. Smart,* 278 S.C. 515, 299 S.E.2d 686 (1982).

Appellant cites *Morgan v. Illinois,* 504 U.S. 719, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992), for the proposition that general questions about whether a juror would follow the law are not adequate in *voir dire.* In *Morgan,* the United States Supreme Court held the defendant was entitled to know if jurors would consider general mitigating evidence. The Court did not hold that the defendant was entitled to know if a juror would consider specific mitigating evidence.

---

**3.** We note the trial judge also ruled that he would not let the State identify any specific aggravating circumstance during voir dire.

In *United States v. Tipton,* 90 F.3d 861 (4th Cir.1996), the court held the trial court's refusal to allow questioning of jurors about specific mitigating factors did not constitute an abuse of discretion. Appellant had wanted to ask jurors whether they would be willing to consider mitigating factors such as appellant's "deprived poor background," "emotional," "physical abuse," "young age," "limited intelligence," and "brain dysfunction." The court stated that "[t]he undoubted fact that such detailed questioning might have been somehow helpful to appellant in exercising peremptory challenges does not suffice to show an abuse of discretion." *Id.* at 880. The court reasoned that the trial judge had sufficiently voir dired the jurors to cull out any prospective juror who would always vote for the death penalty whatever the circumstances.

In *Mu'Min v. Virginia,* 500 U.S. 415, 111 S.Ct. 1899, 1905, 114 L.Ed.2d 493 (1991), the United States Supreme Court held a defendant is entitled to specific questions only if the failure to ask them would render his trial "fundamentally unfair." Here, the trial judge stated he would allow appellant to ask whether a juror would consider mitigating circumstances as presented by the defense and as instructed by the court. This general question covers whether a juror would refuse to consider mitigating circumstances and does not render appellant's trial unfair. Accordingly, this issue has no merit.

### Victim Impact Evidence

■■■ Appellant contends the trial court erred in allowing the admission of victim impact evidence. We disagree.

At the time of appellant's trial, S.C.Code Ann. § 16–3–1550 (1985) provided that a victim may submit to the court at the time of sentencing a victim impact statement to be considered by the judge. Subsection (A) provided: "The provisions of this section govern the disposition of any offense within the jurisdiction of the General Sessions Court, *excluding any crime for which a sentence of death is sought,* in any case which involves an identified victim whose whereabouts are known." (emphasis added).[4] Appellant contends this language

---

4. This section was re-written by 1997 Act No. 141, § 3, effective October 1, 1997. This exclusionary language is not in the current statute.

prohibited victim impact evidence from being admitted at his trial. We disagree.

This section merely limits the victim impact evidence in non-capital cases. It does not address the admission of victim impact evidence in capital proceedings. By merely excluding capital proceedings, this section does not prohibit any victim impact evidence from being admitted in capital sentencing proceedings.[5] Section 16-3-1550 merely sets forth the procedure for victim impact statements for other crimes. There is no statutory section which provides for the introduction of victim impact evidence in a death penalty case. However, our case law clearly allows for its introduction.

In *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court reversed its prior precedent regarding the admission of evidence of a victim's personal characteristics and the emotional impact of the murder on the victim's family in a capital sentencing hearing. We adopted *Payne* in *State v. Johnson*, 306 S.C. 119, 410 S.E.2d 547 (1991). Accordingly, this issue has no merit.

Appellant's remaining arguments are affirmed pursuant to Rule 220(b)(1), SCACR, and the following authorities: Issue 1: *State v. Babb*, 299 S.C. 451, 385 S.E.2d 827 (1989) (denial of motion for continuance will not be disturbed absent clear abuse of discretion resulting in prejudice); Issue 6: *Washington v. Whitaker*, 317 S.C. 108, 451 S.E.2d 894 (1994) (admission of evidence is within sound discretion of trial court and its ruling will not be disturbed on appeal absent clear abuse of discretion); Issue 8: *State v. Simpson*, 325 S.C. 37, 479 S.E.2d 57 (1996) (*Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), applies only when defendant is ineligible for parole and future dangerousness is argued).

We have conducted the proportionality review pursuant to S.C.Code Ann. § 16-3-25 (1985). The sentence was not the result of passion, prejudice, or any other arbitrary factor; the evidence supports the finding of the aggravating circumstance; and the sentence is not disproportionate to that imposed in

---

5. We also note subsection (F) states: "No sentence may be invalidated because of failure to comply with the provisions of this section."

similar cases. *State v. South,* 285 S.C. 529, 331 S.E.2d 775, *cert. denied,* 474 U.S. 888, 106 S.Ct. 209, 88 L.Ed.2d 178 (1985).

**AFFIRMED.**

FINNEY, C.J., TOAL, WALLER and BURNETT, JJ., concur.