654 S.E.2d 300

**The STATE, Respondent,**

v.

**Donald Wayne PAIGE, Appellant.**

**No. 4320.**

Court of Appeals of South Carolina.

Submitted Nov. 1, 2007.

Decided Dec. 4, 2007.

---

Deputy Chief Attorney for Capital Appeals Robert M. Dudek, of the South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Henry D. McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Norman Mark Rapoport, of Columbia; and Solicitor Robert M. Ariail, of Greenville, for Respondent.

HUFF, J.:

Appellant, Donald Wayne Paige, was indicted for murder and subsequently convicted of involuntary manslaughter.[1] He appeals, asserting the trial judge erred in failing to require spectators at his trial to remove photograph buttons of the deceased from their clothing. We affirm.[2]

---

[1]. Paige was also indicted for and convicted of possession of a weapon during the commission of a violent crime. However, the trial judge, with the State's consent, vacated the weapons charge based on a determination that involuntary manslaughter did not qualify as a crime of violence.

[2]. We decide this case without oral argument pursuant to Rule 215, SCACR.

## FACTUAL/PROCEDURAL BACKGROUND

This case arose from a tragic confrontation involving three men, resulting in the shotgun death of one of them. The evidence presented at trial shows that around 9:00 in the morning on April 23, 2004, Donald Paige and his friend and employer, Ray Davis, arrived at the camper home of the victim, Jason Henderson, and his fiancée, Andrea Pruitt. Paige and Davis knocked on the door, and Henderson answered it. Paige held a sawed-off shotgun. A conversation ensued and heated words were exchanged between Henderson and Paige. Although there is some dispute as to whether Paige pointed the gun at Henderson and whether Henderson grabbed the gun, causing it to discharge, it is undisputed that the gun went off, hitting Henderson in his abdomen, resulting in his death. It is also undisputed that Paige entered Henderson's property accompanied by Davis for the purpose of confronting Henderson about a financial dispute between Henderson and Davis, he did so armed with a sawed-off shotgun, and when he knocked on Henderson's door he had the shotgun loaded and cocked with his finger on the trigger.

## LAW/ANALYSIS

The only issue raised on appeal is whether the trial court erred in denying appellant's motion to have spectators in the courtroom remove from their clothing photograph buttons of the victim. Appellant contends there was evidence the decedent was "going after appellant when the gun accidentally" discharged, and that, by wearing the buttons, the spectators were attempting to create sympathy "for what otherwise did not appear to be a very sympathetic situation," to the prejudice of appellant. Appellant maintains he is thus entitled to a new trial. We disagree.

The record reveals that prior to jury selection in Paige's trial, defense counsel indicated she had a matter to bring to the court's attention. Counsel noted that there were "several persons sitting on this side behind the State with pictures taped to their clothing." She inquired whether they were pictures of the deceased and asked, if they were, that the spectators remove them. The solicitor responded that they were pictures of the deceased, that his family members had

the buttons created after his death, and that none of the State's witnesses would be wearing them. The court questioned whether any of these individuals would be testifying, and the solicitor indicated they would not. The following colloquy then occurred:

[Court]: They will be sitting in the back of the courtroom? None of them will be at the counsel table?

[Solicitor]: None will be at the table, Your Honor. We will be happy to put them in whatever row the court deems appropriate, but certainly they are—it's a public courtroom and a photograph of the deceased can't be prejudicial.

Defense counsel objected, stating the purpose of the photo was to invoke jury sympathy for the State's case, and because they were sitting behind the State in the courtroom, it was prejudicial to the defendant. The court ruled it would not require the individuals to remove the buttons, but would make sure that they did not sit on the front row of seats. He further instructed the solicitor that she was to instruct these spectators there were to be no gestures of any kind made by them, or they would be removed from the courtroom. The court stated if they pointed to the picture or did anything to try to influence the jury, it would not be tolerated. The solicitor insured the court these individuals would be instructed accordingly. Thereafter, the jury was drawn and the trial proceeded, with no further mention of the buttons.

Whether a defendant's fair trial rights may be violated when spectators wear photo buttons of the victim at his or her trial is a matter of first impression in this jurisdiction. The United States Supreme Court has recently indicated that the effect of spectators wearing such buttons on a defendant's fair trial rights was an open question. *Carey v. Musladin*, —— U.S. ——, ——, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006). In *Carey*, the state court, citing *Holbrook v. Flynn*, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), found Musladin had to show actual or inherent prejudice to succeed on his claim, and concluded the buttons "had not branded defendant with an unmistakable mark of guilt in the eyes of the jurors." *Id.* at 652. At the conclusion of the state appellate process, Musladin filed an application for writ of habeas corpus in federal district court, which the District Court denied. The Court of Appeals for the Ninth Circuit reversed, finding the state

court's decision was contrary to, or involved an unreasonable application of, clearly established federal law. *Id.* In particular, the Court of Appeals relied on the Supreme Court's decisions in *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) and *Holbrook v. Flynn,* 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986). *Id.* The Supreme Court vacated, finding there was a lack of holdings from the court regarding the potentially prejudicial effect of spectator courtroom conduct and, thus, the state court did not unreasonably apply clearly established federal law.[3] *Id.* at 654. In doing so, the Supreme Court observed that both *Williams,* wherein the State compelled the defendant to stand trial in prison garb, and *Flynn,* wherein the State seated four uniformed troopers immediately behind the defendant at trial, involved government-sponsored courtroom practices, as opposed to the spectator conduct complained of by Musladin. *Id.* at 653. While the court had articulated the test for inherent prejudice that applies to state conduct in *Williams* and *Flynn,* the court concluded it had never applied that test to spectators' conduct. The court then pointed out, "Indeed, part of the legal test of *Williams* and *Flynn*—asking whether the practices furthered an essential *state* interest—suggests that those cases apply only to state sponsored practices." *Id.* at 653–54.

Turning to our own established law, we note the general rule in this State is that the conduct of a criminal trial is left largely to the sound discretion of the trial court, and the appellate court will not interfere unless it clearly appears that the rights of the complaining party were abused or prejudiced in some way. *State v. Bridges,* 278 S.C. 447, 448, 298 S.E.2d 212, 212 (1982). As to courtroom conduct, our courts have held that a defendant in a criminal prosecution is constitutionally guaranteed a fair trial by an impartial jury, and in order to fully safeguard this protection, it is required that the jury render its verdict free from outside influence. *State v. Carrigan,* 284 S.C. 610, 613–14, 328 S.E.2d 119, 121 (Ct.App.1985).

---

3. The Supreme Court pointed out that the lack of guidance from its own court was reflected in the lower courts' widely divergent treatment of defendants' spectator-conduct claims, ranging from applying *Williams* and *Flynn* to spectator claims, to distinguishing *Flynn* on the facts, to ruling on the issue without relying on, discussing, or distinguishing *Williams* or *Flynn. Musladin,* 127 S.Ct. at 654.

In *State v. Stewart,* 278 S.C. 296, 295 S.E.2d 627 (1982), *cert. denied,* 459 U.S. 828, 103 S.Ct. 64, 74 L.Ed.2d 65 (1982), our supreme court stated as follows:

> The right to a fair trial by an impartial jury in a criminal prosecution is guaranteed by the Sixth Amendment to the U.S. Constitution and by Article I, § 14, of the S.C. Constitution. While this right does not require a "perfect" trial, the very heart of a "fair trial" embodies a disciplined courtroom wherein an accused's fate is determined solely through the exercise of calm and informed judgment.
>
> > Ideal conditions, it is true, are not to be expected, and verdicts should not be set aside by an appellate court for misconduct in a trial, unless the evidence is clear and convincing that extraneous influences so interfered with the conduct of the trial, or so pressed upon the jury, as to become factors in the result. *State v. Weldon,* 91 S.C. 29, 74 S.E. 43 (1912).
>
> It is the duty of the trial judge to see that the integrity of his court is not obstructed by any person or persons whatsoever. *Shearer v. DeShon,* 240 S.C. 472, 126 S.E.2d 514 (1962); 75 Am.Jur.2d Trial § 40 (1974). His exercise of this duty will not be disturbed absent an abuse of discretion.

*Id.* at 303–04, 295 S.E.2d at 630–31.

While research reveals our state courts have not addressed the issue of spectator courtroom conduct of wearing buttons displaying photos of the victim, our supreme court has addressed the issue of the government-sponsored courtroom practice of having uniformed officers present in the courtroom. In *State v. Hill,* 331 S.C. 94, 501 S.E.2d 122 (1998), *cert. denied,* 525 U.S. 1043, 119 S.Ct. 597, 142 L.Ed.2d 539 (1998), Hill asserted the presence of the officers "was a show of force which denied him a fair trial." *Id.* at 100–01, 501 S.E.2d 122, 501 S.E.2d at 125–26. Citing *Holbrook v. Flynn,* 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986), the court held that in order to prevail on such a claim, Hill was required to show that measures taken in the courtroom created either an actual or inherent prejudicial effect on the jury. *Id.* at 101, 501 S.E.2d at 126. "Inherent prejudice occurs when 'an unacceptable risk is presented of impermissible factors coming into play.'" *Id.* citing *Flynn.* Noting the court could not deter-

mine from the record how many uniformed officers were present, nor whether they were present to provide security or to testify, it found any actual prejudice in the case was wholly speculative, and Hill failed to present any evidence to show the presence of the officers had any effect on the jury. The court further determined that without anything more than Hill's mere assertion that six officers were present in the courtroom, the court could not find Hill had shown any inherent prejudice. *Id.*

■ In the case at hand, assuming arguendo that our state courts would apply the "actual or inherent prejudicial effect on the jury" test to this spectator, as opposed to state-sponsored conduct, we conclude Paige has failed to show any actual or inherent prejudice under the circumstances of this case. The record shows the only mention of the buttons was prior to jury selection, and out of the presence of the jury venire, at which time defense counsel had to inquire whether the buttons did in fact depict a picture of the victim. There is no evidence of the size of the buttons, or the number of spectators who wore the buttons. While the trial court stated he would not require the individuals to remove the buttons, he insured that these spectators would not be called as witnesses, nor would they be seated in the front row. He further instructed that these individuals would not be allowed to make gestures, point to the pictures, or do anything in an attempt to influence the jury. Because no other mention was made of the buttons, this court cannot even determine that these spectators remained in the courtroom for the remainder of the trial or, if they did, whether they continued to wear the buttons. Simply put, there is absolutely no evidence of record that the jurors in this matter were ever exposed to these button photos, and, if they were, whether they could perceive that they depicted the victim. Accordingly, we find no actual or inherent prejudice to Paige based on the record before us. Additionally, the evidence is not clear and convincing of extraneous influences that "so interfered with the conduct of the trial, or so pressed upon the jury," as to become factors in the result of Paige's trial. *State v. Stewart,* 278 S.C. at 303, 295 S.E.2d at 631 (quoting *State v. Weldon,* 91 S.C. 29, 74 S.E. 43 (1912)).

Based on the foregoing, Paige's conviction is **AFFIRMED.**

PIEPER, JJ., and CURETON, AJ., concur.