**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Ray Kelly, Appellant.

Appellate Case No. 2022-001449

———————————

Appeal From Greenville County
Edward W. Miller, Circuit Court Judge

———————————

Unpublished Opinion No. 2025-UP-247
Heard April 16, 2025 – Filed July 16, 2025

———————————

**AFFIRMED**

———————————

Appellate Defender Joanna Katherine Delany, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, and Assistant Attorney General William Joseph Maye, all of Columbia; and Solicitor Cynthia Smith Crick, of Greenville, all for Respondent.

———————————

**PER CURIAM:** Ray Kelly (Appellant) was convicted of several offenses, including murder, arising out of his attempt to flee a traffic stop. Appellant contends he is entitled to a new trial due to the use of a restraint chair for part of his trial, the use of shackles throughout the trial, the presence of uniformed law enforcement officers in the gallery, and the admission of certain evidence. We respectfully disagree and affirm.

## STANDARD OF REVIEW

"Appellate courts apply the 'discretion' standard to review decisions trial courts make on procedural questions," including decisions to admit or exclude evidence and decisions to restrain a defendant in the jury's presence. *Morris v. BB&T Corp.*, 438 S.C. 582, 586, 885 S.E.2d 394, 396 (2023); *see also State v. Hatcher*, 392 S.C. 86, 91, 708 S.E.2d 750, 753 (2011) ("The admission of evidence is within the discretion of the trial court and will not be reversed absent an abuse of discretion." (quoting *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006))); *State v. Collins*, 409 S.C. 524, 534, 763 S.E.2d 22, 28 (2014) ("We review a trial court's decision regarding Rule 403 pursuant to the abuse of discretion standard and are obligated to give great deference to the trial court's judgment." (citation omitted)); *State v. Tucker*, 320 S.C. 206, 209, 464 S.E.2d 105, 107 (1995) ("Whether a defendant is restrained during trial is within the trial judge's discretion."); *State v. Stewart*, 278 S.C. 296, 303–04, 295 S.E.2d 627, 631 (1982) ("It is the duty of the trial judge to see that the integrity of his court is not obstructed by any person . . . , [and] exercise of this duty will not be disturbed absent an abuse of discretion.").

"An abuse of discretion occurs [and warrants reversal] when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Hatcher*, 392 S.C. at 91, 708 S.E.2d at 753 (quoting *Pagan*, 369 S.C. at 208, 631 S.E.2d at 265); *see also Deck v. Missouri*, 544 U.S. 622, 629 (2005) (finding a trial court's decision to restrain a defendant in the jury's presence should be reversed "only in cases of clear abuse" because precedent "emphasize[s] the importance of preserving trial court discretion").

## RESTRAINT CHAIR

Appellant argues the trial court erred in authorizing the use of a restraint chair at the beginning of his trial because he believes it was not justified by the circumstances and the trial court "did not articulate why a verbally 'disruptive' defendant who refused to come out of the holding cell required a restraint chair." We disagree.

"Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993). After cataloging the history of the prohibition against visible shackles, both in English and early American courts, the U.S. Supreme Court held "the Constitution forbids the use of visible shackles during the . . . guilt phase, *unless* that use is 'justified by an essential state interest' . . . specific to the defendant on trial." *Deck*, 544 U.S. at 624, 626–28 (quoting *Holbrook v. Flynn*, 475 U.S. 560, 568–69 (1986)); *see also Tucker*, 320 S.C. at 209, 464 S.E.2d at 107 ("The trial judge is to balance the prejudicial effect of shackling with the considerations of courtroom decorum and security."). However, "any such determination must be case specific; that is to say, it should reflect particular concerns . . . related to the defendant on trial." *Deck*, 544 U.S. at 633.

We recognize the harm inherent in the jury seeing restraints on a defendant. The U.S. Supreme Court described the use of shackles and gags in an American courtroom as "something of an affront to the very dignity and decorum of judicial proceedings that the judge [was] seeking to uphold." *Illinois v. Allen*, 397 U.S. 337, 344 (1970). Still, the Court found that, in some cases, complete physical restraint "might possibly be the fairest and most reasonable way to handle" a disruptive defendant. *Id.*

Appellant was extraordinarily disruptive during the leadup to his trial and at the beginning of the trial. The record is replete with instances where he was completely uncooperative and refused to answer basic questions posed by judges. Appellant was cautioned three times, by two different judges, that he was being disruptive and there would be consequences if he continued. Appellant did not heed these warnings and continued to disrupt the proceedings by refusing to participate even though he was representing himself. This shocking display of noncompliance culminated in Appellant refusing to exit his holding cell before opening statements. As a result, Appellant was put in a restraint chair and brought into the courtroom. The trial court made a finding, outside of the jury's presence, that Appellant had been disruptive and that it was approving the restraint chair's use pursuant to the U.S. Supreme Court's guidelines in *Illinois v. Allen*.

It is evident from the record that the trial court was aware of the applicable law and that the court ruled in light of that law and based on the facts of this case. This was accordingly an appropriate exercise of the trial court's discretion. *See Morris*, 438 S.C. at 587, 885 S.E.2d at 397 ("[W]a trial court's . . . thought process of applying sound principles of law to the court's view of the facts and circumstances is evident

in the record of proceedings[,] . . . the appellate court will defer to the trial court's exercise of discretion . . . ."); *see also State v. Hill*, 266 S.C. 49, 51, 221 S.E.2d 398, 399 (1976) ("The exercise of discretion implies conscientious judgment, not arbitrary action, and takes account of the law and particular circumstances of the case, being directed by the reason and conscience of the judge to a just result."). Appellant contends the trial court could have utilized other options available under *Illinois v. Allen*, but the trial court does not abuse its discretion simply because it could have done something differently.

On this exceptional record, we find the trial court did not abuse its discretion in authorizing the use of the restraint chair.

**AUDIBLE SHACKLES**

The trial court allowed Appellant to proceed without the restraint chair after Appellant authorized standby counsel to represent him. However, the trial court decided Appellant would remain shackled at the wrists and ankles with the exclusion of his writing hand. Appellant argues requiring him to remain shackled throughout the trial was unduly prejudicial because the shackles were audible to the jury. We respectfully disagree.

It is well settled that visible shackling is inherently prejudicial because the use of visible shackling "suggests to the jury that the justice system itself sees a 'need to separate [the] defendant from the community at large.'" *Deck*, 544 U.S. at 630 (quoting *Holbrook*, 475 U.S. at 569). As far as we are aware, no authority discusses prejudice stemming from audible shackles that are concealed from the jury's vision. Our supreme court has made clear that no error occurs when shackles were not seen by the jury and "[t]he trial judge took precautions to minimize any prejudice the restraints might have caused throughout the trial." *Tucker*, 320 S.C. at 209–10, 464 S.E.2d at 107. In this case, trial counsel acknowledged that the trial court placed picnic screens "and whatnot" around the table where Appellant was seated during the trial to ensure the shackles were not visible to the jury. Thus, the trial court did not err in balancing the need to restrain Appellant against the need to minimize any potential prejudice from the sight of the shackles.

The prejudice arising from shackling is identical to the prejudice that stems from forcing a defendant to be tried in prison attire. *See Holbrook*, 475 U.S. at 569 (noting "shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large"); *see also Estelle v. Williams*, 425 U.S. 501, 504 (1976) ("Courts have, with few exceptions, determined that an accused should

not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption [of innocence] so basic to the adversary system." (footnote omitted)). We point out the parallel between the prejudice of visible restraints and the prejudice from wearing prison attire because it is undisputed that Appellant *voluntarily chose* to wear the clothing issued by the jail throughout his trial. Given Appellant's refusal to change clothes, we cannot see how he could possibly have been prejudiced by the fact that the jury may have heard Appellant's restraints but not seen them. *See Estelle*, 425 U.S. at 507 ("No prejudice can result from seeing that which is already known." (quoting *United States ex rel Stahl v. Henderson*, 472 F.2d 556, 557 (5th Cir. 1973))); *see also id.* at 508 ("A defendant may not remain silent and willingly go to trial in prison garb and thereafter claim error." (quoting *Hernandez v. Beto*, 443 F.2d 634, 637 (5th Cir. 1971))).

## PRESENCE OF LAW ENFORCEMENT

Appellant claims the number of uniformed law enforcement officers in the courtroom during his trial violated his "right to a fair trial free from outside influence" because it created an "overwhelming partisan atmosphere in the courtroom." We disagree.

When a party claims courtroom procedure infringed on his or her right to a fair trial, an appellate court must analyze the "scene presented to jurors and determine whether what [the jury] saw was so inherently prejudicial as to pose an unacceptable threat to [the] defendant's right to a fair trial." *Holbrook*, 475 U.S. at 572. "[I]f the challenged practice is not found inherently prejudicial and if the defendant fails to show actual prejudice, the inquiry is over." *Id.* Though the Supreme Court has suggested *Holbrook* "appl[ies] only to state-sponsored practices," *Carney v. Musladin*, 549 U.S. 70, 76 (2006), this court has applied the "'actual or inherent prejudicial effect on the jury' test" to spectator conduct during trial. *State v. Paige*, 375 S.C. 643, 648–49, 654 S.E.2d 300, 303 (Ct. App. 2007) (quoting *State v. Hill*, 331 S.C. 94, 501 S.E.2d 122 (1998) (holding mere presence of spectators is not sufficient to establish inherent or actual prejudice; rather, the challenged spectators must engage in some affirmative conduct in an attempt to influence the jury)).

Our caselaw recognizes a clear distinction between a spectator and an activist. A spectator, who merely observes a trial in open court, only becomes an "activist" when they attempt to influence the jury or otherwise participate in the trial through affirmative conduct. *See Paige*, 375 S.C. at 649, 654 S.E.2d at 303 (finding no evidence to support the defendant's prejudice claim based on a group of spectators at the murder trial wearing buttons with a picture of the murder victim on them); *id.*

(highlighting there was no evidence the spectators attempted "to make gestures, point to the pictures, or do anything in an [effort] to influence the jury," nor were they permitted to per the trial court's instruction).

Like the trial court in *Paige*, the trial court in this case took precautions to mitigate any prejudice that could arise from the gallery.  Before trial began, the court stated, "I would instruct the gallery that this is – could be a contentious trial.  So I would expect everyone in the gallery to be on their best behavior.  I don't know how else to say it."  Similarly, before closing arguments, the trial court cautioned "the gallery to maintain the propriety and sanctity of the courtroom.  If someone gets excited or upset, I would ask you to remove yourself as unobtrusively as possible."

Moreover, no evidence suggests the uniformed officers crossed the line from spectators to activists.  *See, e.g.*, *Holbrook*, 475 U.S. at 569 ("[T]he presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable. . . .  Indeed, it is entirely possible that jurors will not infer anything at all from the presence of the guards.  If they are placed at some distance from the accused, security officers may well be perceived more as elements of an impressive drama than as reminders of the defendant's special status.").  Appellant acknowledged that the law enforcement officers attended trial to show support for a fallen officer.  Nothing in the record demonstrates the jury did not have the same understanding.  *See Hill*, 331 S.C. at 101, 501 S.E.2d at 126 (finding prejudice was "wholly speculative" when appellant "presented no evidence to show the presence of the officers had any effect on the jury").

Accordingly, we find the trial judge did not err as he appropriately managed the gallery to prevent spectators from influencing the jury or disrupting the proceedings.

**BODY CAMERA VIDEOS**

Appellant argues the trial court erred in admitting several pieces of body camera footage from the traffic stop and the subsequent car crash because he believes the videos should have been excluded under Rule 403, SCRE.  Again, we respectfully disagree.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Rule 403, SCRE.  Videos or "photographs calculated to arouse the sympathy or prejudice of the jury should be excluded if they are not

necessary to substantiate material facts or conditions." *State v. Lee*, 399 S.C. 521, 528, 732 S.E.2d 225, 228 (Ct. App. 2012) (citation modified).

"Cumulative evidence has repeatedly been defined to be additional evidence of the same kind to the same point." *State v. Funderburke*, 251 S.C. 536, 540, 164 S.E.2d 309, 311 (1968). While the challenged videos were certainly similar to other evidence, we do not find they were needlessly cumulative. The videos showed different angles of this encounter, and this was relevant because Appellant questioned which of the multiple collisions caused the officer's fatal injuries. The videos likely allowed the officers to testify more effectively and likely helped the jury better understand the testimony as each video portrayed a different point of view as this incident developed.

Furthermore, the probative value of the videos was not substantially outweighed by the danger of unfair prejudice because they contained no gruesome or graphic content that was likely to inflame the jury. To the extent the content of this evidence may have been unpleasant, the content was significantly less graphic than the photographs admitted in *Collins*. *See* 409 S.C. at 536, 763 S.E.2d at 29 (holding the probative value of photographs depicting the extensive injuries of a ten-year-old victim's mauling and partial consumption by dogs was not substantially outweighed by the danger of unfair prejudice because "the photos aided the jury in evaluating the testimony offered"); *see also id.* at 535, 763 S.E.2d at 28 ("Courts must often grapple with disturbing and unpleasant cases, but that does not justify preventing essential evidence from being considered by the jury, which is charged with the solemn duty of acting as the fact-finder."); *id.* ("Even the most gruesome photographs may be admissible if they tend to shed light on any issue, to corroborate testimony, or if they are essential in proving a necessary element of a case, are useful to enable a witness to testify more effectively, or enable the jury to better understand [the] testimony." (alteration in original) (quoting *Camargo v. State*, 327 Ark. 631, 940 S.W.2d 464, 467 (1997))).

Accordingly, we find the trial court did not abuse its discretion in admitting the body camera videos into evidence.

**CHAIN OF CUSTODY**

It is well settled "that a party offering into evidence fungible items such as drugs or blood samples must establish a complete chain of custody as far as practicable." *Hatcher*, 392 S.C. at 91, 708 S.E.2d at 753 (quoting *State v. Sweet*, 374 S.C. 1, 6, 647 S.E.2d 202, 205 (2007)). South Carolina courts "have never held the chain of

custody rule requires every person associated with the procedure be available to testify or identified personally, depending on the facts of the case." *Id.* at 93, 708 S.E.2d at 754 (quoting *S.C. Dep't of Soc. Servs. v. Cochran*, 364 S.C. 621, 629, 614 S.E.2d 642, 646 (2005)). While the chain of custody rule is flexible, "[e]vidence is still required as to how the item was obtained and how it was handled to ensure that it is, in fact, what it is purported to be." *Id*. at 95, 708 S.E.2d at 755. In other words, "it is unnecessary that the police account for every hand-to-hand transfer of the item; it is sufficient if the evidence demonstrates a reasonable assurance the condition of the item remains the same from the time it was obtained until its introduction at trial." *Id.* (citation modified); *see also Cochran*, 364 S.C. at 629, 614 S.E.2d at 646 ("Generally, we will uphold the chain of custody if the safeguards instituted ensure the integrity of the evidence, even if every person associated with the procedure is not personally identified.").

Appellant relies on *State v. Williams* for the assertion that a chain of custody is insufficient when the State cannot identify the hospital employee that drew the pertinent blood sample. 301 S.C. 369, 392 S.E.2d 181 (1990). There, our supreme court found the chain of custody inadequate because the blood sample was initially mislabeled, no one could identify who drew the blood, and no one could identify who transported the blood to the laboratory. *Id.* at 371, 392 S.E.2d at 182 . The court emphasized that those "breakdowns, *cumulatively*, render[ed] the chain of custody fatally defective." *Id.* (emphasis added).

There are no similar, cumulative breakdowns here. The blood sample in this case was not initially mislabeled. Appellant refused to identify himself at the hospital. As a result, law enforcement only knew Appellant's "trauma number," which is a unique number assigned to virtually every person admitted to the emergency room. An officer testified that he presented a search warrant to the attending nurse who confirmed the warrant accurately reflected Appellant's trauma code. From there, the officer obtained blood samples corresponding to that trauma number. A defendant who willfully conceals his identity cannot later claim the unique code assigned to him qualifies as a misidentification.

Also, unlike in *Williams*, the State in this case identified who transported the blood. An officer testified at trial that he received the blood sample from the hospital, initiated a chain of custody form, and transported the sample to a South Carolina Law Enforcement Division agent. The State presented evidence establishing the blood here "[was], in fact, what it [was] purported to be." *Hatcher*, 392 S.C. at 95, 708 S.E.2d at 755. The State's DNA analysis expert testified that she tested the

sample and the results showed that the blood was "88 quadrillion times more likely to be" Appellant's DNA.

Accordingly, we find no reversible error in admitting the blood sample into evidence because the State sufficiently explained how the blood sample was obtained, provided how it was transported, and conclusively established the blood belonged to Appellant. *See Hatcher*, 392 S.C. at 93, 708 S.E.2d at 753–54 ("[W]here all individuals in the chain are, in fact, identified and the manner of handling is reasonably demonstrated, it is not an abuse of discretion for the trial judge to admit the evidence in the absence of proof of tampering, bad faith, or ill-motive."); *see also id.* at 94, 708 S.E.2d at 754 ("In examining issues regarding the chain of custody, a mere suggestion that substitution could possibly have occurred is not enough to establish a break in the chain of custody.").

**AFFIRMED.**

**THOMAS, KONDUROS, and HEWITT, JJ., concur.**