801 S.E.2d 742

The STATE, Respondent,

v.

Toaby Alexander TRAPP, Appellant.

**Appellate Case No. 2014-002358
Opinion No. 5487**

Court of Appeals of South Carolina.

Heard December 6, 2016
Filed May 24, 2017
Rehearing Denied June 23, 2017

218

222

224

Dietrich André Lake, of The Lake Law Firm, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General William M. Blitch, Jr., both of Columbia; and Solicitor David Matthew Stumbo, of Greenwood, for Respondent.

WILLIAMS, J.:

In this criminal appeal, Toaby Trapp appeals his conviction for trafficking crack cocaine, arguing the circuit court erred in (1) admitting drug evidence when the State failed to establish a strict chain of custody; (2) admitting testimonial evidence in violation of the Confrontation Clause; (3) failing to grant a *Franks v. Delaware* [1] hearing and subsequently refusing to suppress evidence obtained as a result of the invalid search warrant; and (4) admitting Trapp's alleged confession without a *Jackson v. Denno* [2] hearing when the totality of circumstances demonstrated Trapp's statements were involuntary and thus inadmissible. We affirm.

**FACTS**

On October 8, 2011, Trapp called police when he discovered someone had burglarized his home and stole $7,000 in cash

1. 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

2. 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

from a shoebox in his bedroom closet. During the burglary investigation, crack cocaine was discovered in Trapp's bedroom. A search warrant was executed and other contraband was seized from his home. Trapp was not arrested that evening but was eventually charged and later indicted by a grand jury for trafficking crack cocaine.

A two-day jury trial was conducted from October 30–31, 2014. Prior to trial, Trapp moved to suppress the drug evidence based upon an insufficient chain of custody and an invalid search warrant. Trapp also moved to suppress his alleged confession pursuant to *Jackson v. Denno*. At the conclusion of the pre-trial hearing, Trapp moved to continue the trial. After hearing arguments from both parties on the respective issues, the circuit court denied all of Trapp's motions.

At trial, the State first called Deputy Brad Epps of the Newberry County sheriff's department to testify regarding his involvement that evening. Deputy Epps was the first officer to respond to the scene. Deputy Epps stated he immediately called Investigator Robert Spreng once he confirmed Trapp's home had been burglarized. Once Investigator Spreng arrived, Deputy Epps recollected that Investigator Spreng took photographs of the incident location and assisted in documenting evidence. During Investigator Spreng's investigation, Deputy Epps followed him into Trapp's bedroom where they noticed a large amount of crack cocaine in a pill bottle. Deputy Epps confirmed he personally observed the pill bottle but admitted he failed to notate this observation in his police report. According to Deputy Epps, the details in his report pertained only to the burglary.

The State then called Captain Robert Dennis to testify. Captain Dennis stated he arrived last on the scene after being contacted by Investigator Spreng. Captain Dennis testified he arrived at Trapp's residence "maybe five or six minutes" before Investigator Nick Bouknight returned with a search warrant.[3] According to Captain Dennis, he entered Trapp's

---

3. Investigator Bouknight's affidavit contained six reasons in support of the search warrant, namely that "a bottle containing a quantity of white rock like substance [sic] believed to be crack cocaine and a razor blade

residence and observed the pill bottle on Trapp's bedroom dresser. After searching the remainder of Trapp's home, Captain Dennis questioned Trapp. Captain Dennis stated Trapp was handcuffed at that time as part of their "investigative detention." According to Captain Dennis, he read Trapp his *Miranda* rights, and Trapp agreed to waive his rights. Captain Dennis then recounted that Trapp admitted there was crack in the pill bottle but stated he had forgotten it was in his bedroom and was merely heeding the police dispatcher's instructions not to re-enter his house or disturb its contents prior to police responding to the burglary.

After talking to Trapp, Captain Dennis stated he signed off on the return to the search warrant, logged in the time he received the search warrant, and personally documented the items seized from the residence. Captain Dennis affirmed that Investigator Bouknight, as the narcotics officer for the sheriff's department, personally seized and handled all the drug evidence at Trapp's residence in the presence of both Investigator Spreng and himself. Specifically, Captain Dennis recounted the following inventory was listed in the return and taken pursuant to the search warrant: (1) pictures of the incident location taken by Investigator Spreng; (2) two plastic bags containing a white, solid substance located on the floor in front of the dresser in the master bedroom; (2) a pill bottle on the master bedroom dresser containing a white, solid substance; (3) a CD case scale; (4) a spoon and razor blade with residue; and (5) a straw.

Trapp objected to any testimony from Captain Dennis regarding Investigator Bouknight's role in the chain of custody for the drug evidence.[4] Outside the presence of the jury, Captain Dennis proffered testimony regarding office policy for the collection and storage of drug evidence as well as its submission to the South Carolina Law Enforcement Division (SLED). After extensive arguments regarding the propriety of Captain Dennis's testimony, the court stated, "And I think the State barely gets by it, but they get by it and it gives [Trapp]

---

with white residue on it was observed in plain view in a bedroom of the residence."

4. Investigator Bouknight passed away prior to trial.

the opportunity to argue your weight or credibility of the chain but not admissibility. I'm going to allow it."

Captain Dennis then acknowledged that Investigator Bouknight was also the narcotics evidence custodian, and as part of his duties as custodian, he completed an evidence log-in form and a Form B/Rule 6 form (Form B) to certify the chain of physical custody of the drug evidence. Captain Dennis stated the Form B was produced by SLED and certifies which officer seized the evidence, the type of arrest, and from whom the evidence was seized. Captain Dennis then enumerated the items listed by Investigator Bouknight on the Form B for transport to SLED as follows: "(1) plastic bag containing a quantity of cookie-like substance; (2) plastic baggie containing a quantity of white cookie substance; (3) orange pill bottle containing a quantity of white cookie substance; (4) scale containing a quantity of white residue on it; (5) spoon with a quantity of white residue on it; (6) quantity of white residue." Captain Dennis went on to read Bouknight's affirmation that he received this evidence on October 9, 2011, and delivered "the above-described substance or container to SLED in substantially the same condition as when [he] received it" on October 21, 2011. When questioned by Trapp, Captain Dennis could not explain the discrepancy in items on the return to the search warrant and the Form B, stating he had no knowledge what happened to the razor blade and straw that were seized from Trapp's residence but were not submitted to SLED for testing.

In addition to Deputy Epps and Captain Dennis,[5] the State called Lynn Black, a forensic chemist with SLED, who testified regarding the chain of custody from the sheriff's department to SLED. Black stated Selena Kinard, a forensic technician at SLED, received drug evidence from Investigator Bouknight on October 21, 2011, logged in the evidence, placed a bar code on it for identification within the lab, and immediately transferred it to SLED's secure storage room. Black also testified SLED's policy was to return evidence if it appeared to have been tampered with prior to delivery.

---

5. Investigator Spreng was no longer employed with the sheriff's department at the time of trial, and therefore, was not present at trial.

On October 25, 2011, Patricia Crooks, a forensic technician at SLED, transferred the evidence from the secured storage room to Black for testing. Black stated that within the best evidence kit were four unsealed manila envelopes and two plastic Ziploc bags.[6] Black affirmed that she had no knowledge of what happened to the drug evidence between its seizure at Trapp's residence and its delivery to SLED. After she tested the substances, Black testified she placed the items into another plastic bag that she heat-sealed, bar-coded, dated, and initialed.

Trapp did not present a case or testify at trial. The jury found Trapp guilty of trafficking crack cocaine. Trapp moved for judgment notwithstanding the verdict (JNOV) and a new trial, and the circuit court denied both of these motions. Because it was Trapp's third offense, the circuit court sentenced Trapp to a mandatory minimum of twenty-five years imprisonment and issued a mandatory fine of $50,000. This appeal followed.

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Wilson,* 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001). Therefore, an appellate court "is bound by the [circuit] court's factual findings unless they are clearly erroneous." *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "This same standard of review applies to preliminary factual findings in determining the admissibility of certain evidence in criminal cases." *Wilson,* 345 S.C. at 6, 545 S.E.2d at 829. "The admission of evidence is within the discretion of the [circuit] court and will not be reversed absent an abuse of discretion." *State v. Gaster,* 349 S.C. 545, 557, 564 S.E.2d 87, 93 (2002). "An abuse of discretion occurs when the conclusions of the [circuit] court either lack evidentiary support or are

---

6. According to the SLED lab report, of the four manila envelopes in the Best Evidence Kit, two envelopes contained plastic bags holding a "rock substance," one envelope contained the pill bottle, and one envelope contained a digital scale with a white residue on it. SLED also received a Ziploc bag containing a silver metal spoon with a white residue on it and a Ziploc bag containing a "rock substance." When questioned by Trapp as to whether she tested any straws or razor blades—two items that were listed on the return to the search warrant but not in the SLED report—she stated she had no knowledge of these items.

controlled by an error of law." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006).

## LAW/ANALYSIS

### I. Chain of Custody

Trapp first contends the circuit court erred in admitting the drug evidence because the State failed to establish a strict chain of custody. We disagree.

As an initial matter, the State argues Trapp waived any argument regarding the sufficiency of the chain of custody because Trapp did not contemporaneously object when the forensic chemist, Lynn Black, presented her results at trial. Because the State is required to establish the chain of custody prior to admitting drug evidence, the State contends Trapp's failure to object to the results of the SLED analysis effectively waived any complaints on appeal regarding the chain of custody and the ensuing admission of the drug evidence.

"To [properly] preserve an issue for review[,] there must be a contemporaneous objection that is ruled upon by the [circuit] court." *State v. Johnson*, 363 S.C. 53, 58, 609 S.E.2d 520, 523 (2005). However, once the court has an opportunity to rule on an issue, and does so, it is unnecessary for trial counsel to continually renew the same objection. *See Bennett v. State*, 383 S.C. 303, 308, 680 S.E.2d 273, 275 (2009) (finding it unnecessary for trial counsel to renew his objection to continuing objectionable testimony when the circuit court had already ruled on the issue).

During trial, Trapp challenged the admission of the drug evidence based upon an incomplete chain of custody on several occasions prior to Black's testimony. Specifically, Trapp objected to the State's line of questioning with Captain Dennis, arguing the State was trying to "backdoor" chain of custody evidence for the drugs through Captain Dennis because Investigator Bouknight had passed away. Trapp argued Investigator Bouknight was the only individual who could testify as to the condition of the drugs prior to their delivery to SLED, and without Bouknight's testimony, the chain was incomplete. The circuit court acknowledged Trapp's objection, stating, "All right. All right. Enough, I understand your argument." When

the State then asked the court, "Didn't in his opening [Trapp say] we're not going to contest the fact that it's crack cocaine?," Trapp responded that agreeing to testimony about the type of drug that was seized from Trapp's home was a "totally different argument" from the chain of custody argument before the court. Further, during Black's testimony, Trapp again reiterated that he was not objecting to the identification of the drugs as crack cocaine; rather, he was objecting to the "admissibility of the actual drugs into evidence" based upon an incomplete chain of custody. We find these objections, and the court's rulings on the objections, sufficiently preserve this issue for this court's review.

On the merits, we find the State presented sufficient evidence to reasonably demonstrate a complete chain of custody. A party offering into evidence fungible items such as drugs or blood samples must establish a complete chain of custody as far as practicable. *Benton v. Pellum*, 232 S.C. 26, 33, 100 S.E.2d 534, 537 (1957). When an analyzed substance has passed through several hands, the identity of individuals who acquired the evidence and what was done with the evidence between the taking and the analysis must not be left to conjecture. *Id.* at 33–34, 100 S.E.2d at 537. Accordingly, if the identity of each person handling the evidence is established, and the manner of handling is reasonably demonstrated, the circuit court does not abuse its discretion in admitting the evidence absent proof of tampering, bad faith, or ill-motive. *State v. Taylor*, 360 S.C. 18, 25, 598 S.E.2d 735, 738 (Ct. App. 2004).

"Testimony from each custodian of fungible evidence, however, is not a prerequisite to establishing a chain of custody sufficient for admissibility." *State v. Sweet*, 374 S.C. 1, 7, 647 S.E.2d 202, 206 (2007). "Whe[n] other evidence establishes the identity of those who have handled the evidence and reasonably demonstrates the manner of handling of the evidence, our courts have been willing to fill gaps in the chain of custody due to an absent witness." *Id.* "The ultimate goal of chain of custody requirements is simply to ensure that the item is what it is purported to be." *State v. Hatcher*, 392 S.C. 86, 95, 708 S.E.2d 750, 755 (2011).

Considering these factors, we find the circuit court did not abuse its discretion in finding the State established a sufficient chain of custody. Specifically, Captain Dennis was present at the incident location and observed all the items that were seized from Trapp's residence. Further, Captain Dennis signed the return to the search warrant and testified under oath that Investigator Bouknight collected these items at the scene and placed them in manila envelopes for transport to the secured evidence locker at the sheriff's department. Captain Dennis went on to testify how drug evidence was routinely handled at the sheriff's department, stating that, as evidence custodian, Investigator Bouknight would have placed the items inside a best evidence kit prior to storing them in a secure evidence locker, to which only Bouknight had access. Although Bouknight was deceased at the time of trial, the State presented documentation that Bouknight transported the seized items to SLED.

We also find support for our conclusion by reference to Black's testimony. She stated the items were still inside manila envelopes when she removed them from the best evidence kit for testing. The items in the SLED report matched the items that Bouknight certified on the Form B that he delivered to SLED. We find this is evidence from which a juror could reasonably conclude the item was what the State purported it to be. *See id.* Although we are aware that two of the items—a straw and one razor blade—were documented by Bouknight on the evidence log-in form but not delivered to SLED, we find the care given to these pieces of evidence goes only to the weight of the evidence as opposed to its admissibility. *See State v. Carter,* 344 S.C. 419, 424, 544 S.E.2d 835, 837 (2001) ("Proof of chain of custody need not negate all possibility of tampering so long as the chain of possession is complete. ... [w]here the identity of persons handling the specimen is established, we have found evidence regarding its care goes only to the weight of the specimen as credible evidence. ... [W]here there is a weak link in the chain of custody, as opposed to a missing link, the question is only one of credibility and not admissibility." (citations omitted)).

Once Bouknight delivered the evidence to SLED, Black testified regarding the chain of custody within SLED and

identified and described each item she tested. Black confirmed that, after she tested all of the substances she received, she placed the items into another plastic bag, which she then heat-sealed, bar-coded, dated, and initialed. When the State presented this bag to her at trial, she identified the bag and testified that it had remained in the same condition as when she sealed it at SLED. Ben Chapman, the evidence custodian at the time of trial, testified he received the bag containing the drug evidence when he became custodian and transported it to trial in the same packaging and in the same condition as it was when given to the sheriff's department from SLED.

Based on the foregoing, we find the State identified every individual that handled the evidence. We recognize Investigator Bouknight was deceased at the time of trial, but we find Captain Dennis's involvement the night of the incident as well as his supervisory role over Investigator Bouknight sufficiently connected any missing links that Bouknight's testimony would have provided. Further, precedent does not require the court to account for every minute of the custody and control of the evidence. Rather, we must view the evidence and ascertain whether the State identified the individuals involved in handling the evidence, reasonably demonstrated that the evidence was handled properly, and established that the evidence seized was the same evidence tested. Despite the less-than-perfect chain of custody, we find the supreme court's reasoning in *Hatcher* to be instructive:

> Courts have abandoned inflexible rules regarding the chain of custody and the admissibility of evidence in favor of a rule granting discretion to the trial courts. "The trial judge's exercise of discretion must be reviewed in the light of the following factors: '. . . the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it.' " "If upon the consideration of such factors the trial judge is satisfied that in reasonable probability the article has not been changed in important respects, he may permit its introduction in evidence."

392 S.C. at 94-95, 708 S.E.2d at 754-55 (citations omitted). Based on the aforementioned circumstances in this case, we find the circuit court did not abuse its discretion in admitting

the drug evidence. Therefore, we affirm the circuit court on this issue.

## II. Testimonial Evidence

Trapp argues the circuit court erred in admitting testimonial evidence in violation of his confrontation rights. We disagree.

■■■ As an initial matter, the State argues Trapp failed to lodge the requisite objection to the admission of these documents and testimony, and therefore, we should not address the merits of this issue. We disagree and find Trapp contested the admission of the search warrant, the evidence log-in form, the Form B, and the SLED analysis request as well as testimony from Investigator Spreng and Investigator Bouknight at trial. Although the State seems to take issue with Trapp's failure to expressly state "Confrontation Clause," we hold Trapp properly articulated his objections to the circuit court. *See State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 694 (2003) (per curiam) ("A party need not use the exact name of a legal doctrine ... to preserve it, but it must be clear that the argument has been presented on that ground.").

Specifically, Trapp argued against the admission of the Form B based on Investigator's Bouknight's unavailability at trial, stating, "Your Honor, but that also goes into play of right of confrontation that we get an opportunity to confront the witness about the voracity [sic] of that particular document and statement." Later at trial when the State sought to introduce the testimony of Ben Chapman, the current evidence custodian for the sheriff's department, Trapp also objected, stating, "And the problem is I have no right or my client has no right to confront any of this. I mean he basically has no right, has not been afforded the right to confront any of the witnesses that this information has come in on." Accordingly, we find this issue preserved for our review.

On the merits, Trapp contests the admission of the evidence log-in form, the Form B, and a SLED drug analysis request form, stating Investigator Bouknight prepared these forms and they were testimonial in nature. Because Trapp could not cross-examine Bouknight regarding these documents, Trapp claims these documents are prohibited because they fail the

*Crawford*[7] test. Furthermore, Trapp contends the circuit court erred when it permitted Captain Dennis to testify about their contents because he had no personal knowledge about these documents. In response, the State argues the Confrontation Clause does not apply because much of the objectionable testimony and exhibits were admitted during pre-trial suppression hearings and, thus, do not trigger the Confrontation Clause. In the alternative, the State claims the evidence is nontestimonial and, thus, does not trigger the Confrontation Clause because the "primary purpose" for the creation of these documents was to determine "the next steps to be taken during the ongoing investigation."

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI. This bedrock procedural guarantee is applicable to the states under the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

The United States Supreme Court has held the Confrontation Clause prohibits the admission of out-of-court testimonial statements of a witness unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. *Crawford*, 541 U.S. at 68, 124 S.Ct. 1354. The *Crawford* Court stated the "core class of testimonial statements" includes: (1) "ex parte in-court testimony or its functional equivalent;" (2) "extrajudicial statements contained in formalized testimonial materials;" (3) "statements made under circumstances that would lead an objective witness to reasonably believe that the statement would be available for use at a later trial;" and (4) "statements taken by police officers in the course of interrogations." *State v. Ladner*, 373 S.C. 103, 112, 644 S.E.2d 684, 688–89 (2007) (citing *Crawford*, 541 U.S. at 51–52, 124 S.Ct. 1354).

 The South Carolina Supreme Court has recognized the Sixth Amendment is not implicated by nontestimonial hearsay. *See id.* at 113, 644 S.E.2d at 689 (noting the Sixth Amendment does not apply when testimonial hearsay is not at

---

7. *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

issue). "However, the fact that the Sixth Amendment is not implicated by nontestimonial hearsay does not mandate the evidence be admitted." *State v. Garner*, 389 S.C. 61, 66, 697 S.E.2d 615, 618 (Ct. App. 2010).

Regarding the applicability of the Confrontation Clause in pre-trial settings, we acknowledge the State's citation to case law and the notion that the Sixth Amendment's protection is one that attaches during a trial. However, the State also introduced the objectionable evidence at trial and used it to establish the State's chain of custody. Because this evidence was considered not only at the pre-trial hearings but at Trapp's trial as well, we are not swayed by the State's argument in this respect.

We find the dispositive question in the resolution of this issue hinges on whether Bouknight's statements and the evidence in controversy were testimonial or nontestimonial. As our courts have reiterated, the Sixth Amendment's protections only attach when hearsay is testimonial. *See Ladner*, 373 S.C. at 113, 644 S.E.2d at 689. Under the primary purpose analysis required by the Sixth Amendment's Confrontation Clause, when the out-of-court statement's primary purpose is to serve as evidence or "an out-of-court substitute for trial testimony," the statement is considered testimonial. *State v. Brockmeyer*, 406 S.C. 324, 342, 751 S.E.2d 645, 654 (2013) (citing *Bullcoming v. N.M.*, 564 U.S. 647, 670, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011) (Sotomayor, J., concurring)). However, "[w]he[n] no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause." *Id.* at 342, 751 S.E.2d at 654–55 (first alteration in original) (quoting *Michigan v. Bryant*, 562 U.S. 344, 359, 131 S.Ct. 1143, 179 L.Ed.2d 93 (2011)).

Reviewing these documents and the relevant case law, we find these documents are nontestimonial and, thus, do not trigger a *Crawford* Sixth Amendment analysis. Rather, we find the "primary purpose" for their creation and maintenance was to document seized evidence and attempt to accurately account for the items as they were transferred from the incident location to the sheriff's department and ultimately to SLED for testing.

In coming to this conclusion, we find these documents and their purposes are similar to evidence logs that our supreme court held were nontestimonial in nature—and, thus, not subject to the Confrontation Clause—in *State v. Brockmeyer*, 406 S.C. 324, 751 S.E.2d 645 (2013). In *Brockmeyer*, the defendant challenged certain evidence because various law enforcement personnel listed within the chain of custody logs were not present to testify at trial. 406 S.C. at 350, 751 S.E.2d at 659. Although the supreme court ruled the defendant failed to properly preserve the issue for appeal, it went on to hold "the challenged testimony referring to certain statements of other non-testifying evidence custodians in the chain-of-custody logs was admissible as a matter of state law and would not raise Confrontation Clause concerns." *Id.* at 351, 751 S.E.2d at 659.

The supreme court recounted the testimony of an evidence custodian from the sheriff's department who documented the purpose of an evidence log and stated "the chain of custody form [was] 'basically ... keeping track of who touches it and what happens to the evidence,' and that the custody forms and data [were] maintained in the normal course of business." *Id.* at 351, 751 S.E.2d at 660. The court then recounted the testimony of a forensic technician at SLED who testified it was "SLED's practice to maintain electronic chain-of-custody records which document every location and person that handles or touches evidence." *Id.* at 352, 751 S.E.2d at 660.

The court concluded the evidence logs were nontestimonial and were properly admitted as a business record under Rule 803(6), SCRE. *Id.* Specifically, the supreme court held as follows:

We find the facts of this case demonstrate that the evidence logs were kept as business records for the purpose of identifying and storing evidentiary items. We find the [circuit court] properly determined the chain-of-custody reports fall within the hearsay exception in Rule 803(6), SCRE, and that the evidence custodians' testimony about the chains of custody was admissible. Critical to admissibility of the chain-of-custody records here is their non-testimonial nature. Regarding the Confrontation Clause analysis, these chains of custody were not created "for the *sole purpose* of providing evidence against the defendant." Indeed, the evi-

dence logs do not purport to prove any fact necessary to the conviction, and the custodians who did not testify were in no manner involved in the testing or analysis of the recovered items; thus, the statements by non-testifying custodians contained in the chain-of-custody logs are not testimonial in nature because their "primary purpose" is not to constitute evidence in a criminal trial. Because we find these statements are not testimonial, they are exempt from Confrontation Clause scrutiny.

*Id.* (citation omitted).

Similar to the supreme court in *Brockmeyer*, we conclude the evidence log-in form, the Form B, and the SLED drug analysis request form were all nontestimonial evidence. First, the Form B is the "initial custody form" and by its own language is expressly created to be a "certificate of proof of chain of physical custody or control." Black's testimony corroborates the purpose of the Form B. At trial, she testified,

The Form B is one of the documents that comes in a Best Kit that we provide, that SLED provides to law enforcement personnel and it [ ] kind of starts the chain-of-custody for us. ... And then we use that information to confirm the person who brought it in and also sometimes the evidence.

Next, the evidence log-in form [8] is a document generated by the sheriff's department and includes information such as the incident date, the officer in control of the chain of custody, the suspect, and a description of the evidence seized and transported to the sheriff's department. Last, the SLED Drug Analysis Request form is a document generated by SLED and requests information regarding the incident, the defendant, and which specimens are being submitted for examination to SLED. Considering the primary purpose behind these documents, we find they are similarly admissible pursuant to the business records exception found in Rule 803(6), SCRE. *See* Rule 803(6), SCRE ("A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course

---

8. The State notes the evidence log-in form was never admitted into evidence, and was only discussed by the SLED drug analyst who handled the drugs at SLED.

of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness; *provided, however,* that subjective opinions and judgments found in business records are not admissible."). As such, we hold they do not implicate the Confrontation Clause.

■ Regarding the search warrant, we find that the "primary purpose" of the search warrant was to assist the police in their investigation. We are not persuaded by Trapp's argument that its primary purpose was to prove any facts necessary to establish Trapp's guilt or to be used as a substitute for trial testimony.[9] Even if the search warrant was testimonial in nature, we hold it was properly before the court as it documented why the investigation proceeded as it did at Trapp's residence. *See Crawford*, 541 U.S. at 59 n.9, 124 S.Ct. 1354 (noting the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted"); *State v. Brown*, 317 S.C. 55, 63, 451 S.E.2d 888, 894 (1994) ("[A]n out-of-court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken." (citing *United States v. Love*, 767 F.2d 1052, 1063 (4th Cir. 1985))).

■ Trapp also takes issue with Captain Dennis's testimony regarding certain facts relayed to him by Investigator Spreng. Trapp argues those statements were testimonial in nature and should have been inadmissible at trial. Trapp fails to specifically reference which testimony he finds objectionable, only citing to page and line numbers in the record. Further, we are not convinced that Captain Dennis's recollection of Investigator Spreng's testimony was intended to prove the truth of Spreng's statements; rather, we find his testimony was to document why the police proceeded as they did in their investigation. Accordingly, we affirm the circuit court's ruling on this issue.

---

9. The parties disagree over whether the search warrant was actually admitted into evidence.

### III. Search Warrant

Trapp next contends the circuit court erred in failing to grant a *Franks v. Delaware* hearing and subsequently refusing to suppress evidence obtained as a result of the invalid search warrant. We disagree.

"A search warrant may [be issued] only upon a finding of probable cause." *State v. Bellamy*, 336 S.C. 140, 143, 519 S.E.2d 347, 348 (1999). Search warrants may be issued "only upon affidavit sworn to before the magistrate . . . establishing the grounds for the warrant." S.C. Code Ann. § 17-13-140 (2014). "A warrant is supported by probable cause if, given the totality of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Kinloch*, 410 S.C. 612, 617, 767 S.E.2d 153, 155 (2014).

"In *Franks v. Delaware*, the United States Supreme Court held the Fourth and Fourteenth Amendments gave a defendant the right in certain circumstances to challenge the veracity of a warrant affidavit after the warrant had been issued and executed." *State v. Missouri*, 337 S.C. 548, 553, 524 S.E.2d 394, 396 (1999). The following two-part test is used to determine whether a hearing is warranted:

(1) To mandate an evidentiary hearing, the challengers' attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof; and

(2) If these requirements are met, and if, when material that is subject of the alleged falsity or recklessness disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Id.* at 554, 524 S.E.2d at 397 (quoting *Franks*, 438 U.S. at 171–72, 98 S.Ct. 2674). Additionally, the defendant must "establish the falsity by a preponderance of the evidence." *State v. Robinson*, 415 S.C. 600, 606, 785 S.E.2d 355, 358 (2016).

Trapp contends the basis for issuing the search warrant was the statement in Investigator Bouknight's affidavit that "a

bottle containing a quantity of white rock like substance believed to be crack cocaine and a razor blade with white residue on it was observed in plain view in a bedroom of the residence." According to Trapp, the pictures of Trapp's bedroom clearly show that a pill bottle was not on his dresser when police first entered his residence to investigate the burglary and it was not until *after* the police returned with a search warrant that the pill bottle appeared in pictures. As a result, Trapp contends this statement in the affidavit was false and entitled him to a *Franks* hearing.

We find the apparent discrepancies in the photos troublesome; however, we find the magistrate properly issued the search warrant. First, there was no testimony that conclusively established the timing of the photographs. The State argues it "is just as likely the photographs with the pill bottle on the dresser were taken before the subsequent pictures after the evidence was seized by the officers." While we are not overly persuaded by the State's argument, we give weight to the fact that both Deputy Epps and Captain Dennis testified they observed the pill bottle on the dresser in the master bedroom when they first entered the house. Further, the parties focus on the location of the pill bottle on the dresser, but the actual wording of the affidavit omits any reference to the dresser, instead stating a pill bottle was observed in plain view in a bedroom of the residence. When the magistrate decided to issue the search warrant, he was not privy to any photographs, so we are not convinced the magistrate relied on any "false statements" in issuing the search warrant. As the affidavit never specified the precise location of the pill bottle, we find the deciding factor in the execution of the warrant to be whether the drugs were in plain view.

Even assuming the statement that the pill bottle was in plain view was false, the officers still could have legally found the drug evidence and, thus, established probable cause for a warrantless search. "Warrantless searches are per se unreasonable unless an exception to the warrant requirement is presented." *State v. Bailey*, 276 S.C. 32, 35, 274 S.E.2d 913, 915 (1981). "The burden is upon the State to justify the warrantless search." *Id.* Our courts have specifically recognized several exceptions to the warrant requirement, including the following: "(1) search incident to a lawful arrest, (2) hot

pursuit, (3) stop and frisk, (4) automobile exception, (5) the plain view doctrine, and (6) consent." *State v. Morris*, 411 S.C. 571, 580, 769 S.E.2d 854, 859 (2015) (quoting *State v. Bailey*, 276 S.C. 32, 36, 274 S.E.2d 913, 915 (1981)).

The affidavit stated the police were at Trapp's residence as a result of Trapp's report of a burglary and located the drugs when the police were processing the scene. We also note the State's argument, and the circuit court's discussion, of consent as an exception to a warrantless search. Even if this court were to find the search warrant invalid, the seizure would still be valid based upon Trapp's consent for police to be on his premises. Trapp called police to report a burglary in his home, specifically telling the police that $7,000 in cash was stolen from a shoebox in his master bedroom closet. As a result, the police entered his home to investigate the burglary, and in so doing, they necessarily processed the scene, including his bedroom. Trapp presented no evidence that he limited the consent he gave to the police in their investigation. As a result, the State established the police had probable cause to conduct a warrantless search based on Trapp's consent to be inside his home. *See Bailey*, 276 S.C. at 36, 274 S.E.2d at 915 (finding warrantless search of residence was proper based on the consent exception to the warrant requirement when resident had authority to consent to the search of the premises).

Based on the foregoing, we find the circuit court did not err in failing to grant a *Franks v. Delaware* hearing.[10]

## IV. Confession

Last, Trapp argues the circuit court erred in admitting his alleged confession into evidence. We disagree.

"Whenever evidence is introduced that was allegedly obtained by conduct violative of a defendant's constitutional rights, the defendant is entitled to have the [circuit

---

10. Additionally, we note the circuit court engaged in an extensive in-camera colloquy, arguably akin to a *Franks* hearing, with both parties that spans almost forty pages of the record. The court permitted counsel for both Trapp and the State to thoroughly argue both positions, asked counsel numerous questions, and received a proffer from Captain Dennis prior to ruling upon whether the statement in the affidavit was false.

court] conduct an evidentiary hearing outside of the presence of the jury at the threshold point to establish circumstances under which it was gained." *State v. Creech*, 314 S.C. 76, 84, 441 S.E.2d 635, 639 (Ct. App. 1993). A criminal defendant is entitled to an independent evidentiary hearing to determine the voluntariness of statements made by the defendant prior to the submission of such statements to the jury. *Jackson*, 378 U.S. at 376, 84 S.Ct. 1774.

When conflicting evidence exists as to whether a defendant's statement is voluntary, the circuit court must determine this factual issue in the first instance by the preponderance of the evidence. *State v. Howard*, 296 S.C. 481, 492, 374 S.E.2d 284, 290 (1988). In its review, the circuit court "must examine the totality of the circumstances surrounding the statement" and decide whether the State has carried its burden in proving the statement was knowingly, intelligibly, and voluntarily given. *State v. Miller*, 375 S.C. 370, 383, 652 S.E.2d 444, 450 (Ct. App. 2007). "This voluntariness requirement is in addition to the intelligent waiver mandate of *Miranda*." *Id.* at 380, 652 S.E.2d at 449. Under *Miranda v. Arizona*, a statement obtained as a result of a custodial interrogation is inadmissible unless the defendant was advised of and voluntarily waived his rights. 384 U.S. 436, 498–99, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Reviewing the totality of circumstances, as we must, we find Trapp's statement was knowingly, intelligibly, and voluntarily given. Furthermore, we hold the testimony establishes that Trapp voluntarily waived his *Miranda* rights. *See Miller*, 375 S.C. at 380, 652 S.E.2d at 449 (stating the voluntariness requirement is in addition to the intelligent waiver mandate of *Miranda*).

As an initial matter, it is unclear whether Trapp argues the circuit court failed to grant him a *Jackson v. Denno* hearing. He alleges in his brief that "he was entitled to an examination on the admissibility of his statement under the totality of circumstances" and "unlike the defendant in [*Miller*] who received a *Denno* hearing, [Trapp's] statement was not examined under a totality of the circumstances standard as required by *Denno*." Based upon our review of the record, we hold the circuit court afforded Trapp a *Denno* hearing.

Specifically, prior to any testimony regarding his confession before the jury, the State says, "All right, well, Judge, I'm going to proffer Captain Dennis' testimony for the purposes of *Jackson v. Denno.*" In response, the court states, "All right, come forward, Captain Dennis." At this point, the State questioned Captain Dennis, Trapp cross-examined Captain Dennis, and then Trapp argued to the circuit court as to why he believed his confession should be suppressed. After his argument, the court concluded Trapp's statement to Captain Dennis was voluntary, and the jury returned to the courtroom. As a result, we find the court afforded Trapp a *Denno* hearing prior to permitting this testimony. *See Creech,* 314 S.C. at 84, 441 S.E.2d at 639 ("Whenever evidence is introduced that was allegedly obtained by conduct violative of a defendant's constitutional rights, the defendant is entitled to have the trial judge conduct an evidentiary hearing outside of the presence of the jury at the threshold point to establish circumstances under which it was gained.").

As to Trapp's *Miranda* rights, Trapp contends Captain Dennis's testimony was unreliable because of his inconsistencies as to when he Mirandized Trapp. Trapp highlights Captain Dennis's statement that he Mirandized Trapp almost immediately after arriving at the scene in the presence of Investigator Bouknight who documented the confession. However, Trapp states this testimony is inconsistent with Captain Dennis's testimony that Investigator Bouknight was not present when he arrived on the scene, and because Investigator Bouknight was not at trial, there is no way to confirm the reliability of Captain Dennis's statement.

Aware of Trapp's argument, we conclude the circuit court did not abuse its discretion in finding Captain Dennis's testimony credible and reliable. We also find Captain Dennis's explanation plausible as to why he did not separately document the confession, as he stated, "Although it was not done by my hand, it was documented by Investigator Bouknight who was there with me whenever the *Miranda* rights were given to him and the statement was made. I would only be duplicating what Investigator Bouknight put down." Captain Dennis also affirmed that he reviewed Bouknight's report. Trapp focuses on the discrepancy in the testimony about whether Investigator Bouknight was present, but we find any

conflict on the timing goes to the weight afforded by the jury to the evidence.[11]

Captain Dennis routinely Mirandized individuals based on his role in the sheriff's department and understood the importance of an individual's *Miranda* rights. He was also aware of the suspected drug evidence at Trapp's home prior to arriving on the scene. Furthermore, Trapp was already handcuffed when Captain Dennis arrived, so we find it unlikely that Captain Dennis would have initiated an interrogation with Trapp without reading him his *Miranda* rights. Captain Dennis stated Trapp did not appear to have any difficulty understanding his rights or to be intoxicated and Trapp willingly agreed to speak with him about the drugs. As a result, we find Trapp was properly Mirandized and voluntarily waived his *Miranda* rights.

■■■ In addition, looking at the totality of circumstances, we find the evidence demonstrates that Trapp's confession was knowingly, intelligibly, and voluntarily given. After Captain Dennis stated Trapp agreed to waive his *Miranda* rights, he testified as follows:

> I asked him, I said, you know what about the drugs that we found in your room. And he was like, man, I forgot about those. And I said, well, how could you forget about something like that. And he said, well, he said, whenever I called 911 the dispatcher told us, you know, don't touch anything, don't go back in the house, wait for law enforcement. And he said, that's what I did. So we, you know, during that time we just pretty much continued to talk kind of back and forth.

---

11. Reviewing the testimony, we also find it plausible that Investigator Bouknight was present when Captain Dennis read Trapp his *Miranda* rights as Captain Dennis stated at trial. Captain Dennis testified to the following sequence of events: (1) Captain Dennis arrived on the scene; (2) Trapp was handcuffed in the front yard; (3) Captain Dennis began to talk to Trapp in the front yard; (4) Captain Dennis and Trapp walked onto the porch; (5) and then they moved inside to the living room "because we knew we were going to be there for a little bit once the search warrant got there." Because Investigator Bouknight was only "five to six minutes" behind Captain Dennis, it is possible all of this could have transpired during this timeframe and that Investigator Bouknight could have returned and been present by the time Captain Dennis read Trapp his *Miranda* rights.

Considering the circumstances surrounding the police's arrival at Trapp's residence—namely that they were there at Trapp's request—and Trapp's apparent explanation that he merely forgot the location of the drugs upon discovering that a large sum of money had been stolen from his residence, we find the circuit court properly found by a preponderance of the evidence that Trapp's confession was freely, intelligibly, and voluntarily given. Accordingly, we affirm the circuit court's decision on this issue.

## CONCLUSION

Based on the foregoing, Trapp's conviction is

**AFFIRMED.**

THOMAS and GEATHERS, JJ., concur.